UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO ESPINOZA, | No. 2:94-cv-1665 KJM DB |
| Petitioner, | |
| v. | ORDER |
| WARDEN, San Quentin State Prison, | |
| Respondent. | |

Petitioner is a state prisoner proceeding through counsel with a petition for a writ of habeas corpus under 28 U.S.C. §2254. On August 25, 2023, this court held oral argument by Zoom videoconference on petitioner's counsel's Petition to Determine Incompetency and for Appointment of Guardian Ad Litem. Assistant Federal Defender Lissa Gardner appeared for petitioner. Respondent's counsel did not appear.[1] After hearing the arguments of counsel, and good cause appearing, this court finds and orders as follows.

////

////

////

---

[1] This court understands that respondent does not take a position on petitioner's counsel's motion. However, if respondent's counsel does not intend to appear at a noticed hearing, they shall file a notice of non-appearance on the docket.

1

## RELEVANT BACKGROUND

In 1986, petitioner was convicted of, among other things, two counts of first degree murder with special circumstances. He was sentenced to death. After appeals and habeas proceedings in the state courts, petitioner initiated these federal habeas proceedings in 1994.

In 2018, petitioner moved to stay these proceedings during the litigation of his state court habeas petition to vacate his death sentence on the grounds he is incompetent to be executed under Atkins v. Virginia, 536 U.S. 304 (2002). (ECF No. 282.) This court granted petitioner's motion and stayed the federal case. (ECF No. 289.) The California Supreme Court transferred the habeas petition to the San Joaquin County Superior Court. After the superior court issued an order for respondent to show cause why the petition should not be granted, the parties entered into a stipulation to vacate petitioner's death sentence. In May 2022, the superior court accepted that stipulation and sentenced petitioner to life without the possibility of parole for his first degree murder convictions. (See ECF No. 292-1.) After being informed of the conclusion of petitioner's state court proceedings, this court lifted the stay of this federal case. (ECF No. 298.)

On June 15, 2023, petitioner's counsel filed a Petition to Determine Incompetency and for Appointment of Guardian Ad Litem. (ECF No. 309.) Respondent's counsel does not take a position on the motion. (See id. at 5.) On August 14, petitioner's counsel, at the court's request, submitted additional evidence in support of the motion. (ECF No. 316.) On August 25, this court held oral argument on the motion. Shortly thereafter, petitioner's counsel filed supplemental authorities in support of their motion. (ECF No. 318.)

## PETITION TO DETERMINE INCOMPETENCY

Petitioner's counsel argues that they have submitted substantial evidence of incompetence and the court should find petitioner incompetent under Federal Rule of Civil Procedure 17 and appoint a guardian ad litem ("GAL"). Initially, this court notes that discussion of appointing a GAL is premature. The court is required to appoint a GAL or other representative if petitioner is found incompetent. Fed. R. Civ. P. 17(c)(2). The questions currently before the court involve making that competency determination. See Ferrelli v. River Manor Health Care Ctr., 323 F.3d

////

1  196, 201 (2d Cir. 2003) (the obligation of the court to appoint a guardian ad litem pursuant to
2  Rule 17(c) does not arise until after a determination of incompetence has been made).

**I. Legal Standards**

In a civil case, including a habeas case, determinations of competency are governed by Federal Rule of Civil Procedure 17. See Allen v. Calderon, 408 F.3d 1150, 1153 (9th Cir. 2005) (applying Rule 17 in a habeas case). The federal court looks to state law competency standards. See Fed. R. Civ. P. 17(b)(1). Under California law, a party is incompetent "if he or she lacks the capacity to understand the nature or consequences of the proceeding, or is unable to assist counsel in the preparation of the case." Golden Gate Way, LLC v. Stewart, No. C 09–04458 DMR, 2012 WL 4482053, at *2 (N.D. Cal. Sept. 28, 2012) (citing In re Jessica G., 93 Cal. App. 4th 1180, 1186 (2001)).

While state law governs the determination of competency, the procedure for determining it is set by federal law. See In re County of Orange, 784 F.3d 520, 523-24 (9th Cir. 2015). In Allen, the Ninth Circuit held that a party "is entitled to a competency determination when substantial evidence of incompetence is presented." Allen, 408 F.3d at 1153. Many courts have held that due process is implicated in the Rule 17 competency inquiry. See Ferrelli, 323 F.3d at 203 (explaining that "due process considerations attend an incompetency finding and the subsequent appointment of a guardian ad litem"); Thomas v. Humfield, 916 F.2d 1032, 1034 (5th Cir. 1990) (observing that the appointment of a guardian ad litem implicates due process concerns because it deprives a litigant of the right to control litigation and subjects him to possible stigmatization).

Chief District Judge Mueller of this court noted that "[f]ederal courts have generally concluded that notice and a hearing are the minimum required." AT & T Mobility LLC v. Yeager, No. 2:13-CV-0007-KJM-DAD, 2015 WL 4751185, at *3 (E.D. Cal. Aug. 11, 2015) (citing Sturdza v. United Arab Emirates, 562 F.3d 1186, 1188 (D.C. Cir. 2009)); see also Golden Gate Way, LLC, 2012 WL 4482053, at *3. Most courts have held the same. "When the party for whom the guardian is sought claims to be competent, at least "some hearing" is required."

////

Thomas, 916 F.2d at 1033. Although this need not always take the form of a "full adversary hearing," at a minimum it entails "notice and an opportunity to be heard." Id. at 1034.

**II. Petitioner's Counsel's Evidentiary Showing**

Counsel provides evidence that petitioner has severe medical disorders that affect his mental health, including chronic schizophrenia, intellectual disability, and an adrenal/pituitary condition that has resulted in two surgeries to remove brain tumors. He has been under involuntary medication orders ("Keyhea orders") pursuant to California Penal Code §2602 since 2011. The most recent Keyhea order was issued in April 2023. The application for the order was supported by the declaration of Dr. Samuel Libeu, a staff psychiatrist at California State Prison, Sacramento. Dr. Libeu concluded that petitioner is "Gravely disabled and lacking capacity to accept or refuse medications." (ECF No. 316-1.)

Petitioner was found incompetent to make medical decisions in 2013 under California Penal Code §2604. (See ECF No. 280-2 at 103-04.) According to the most recent Keyhea application, petitioner is currently subject to a §2604 order. (See ECF No. 316-1 at 4.)

In 2017, petitioner's counsel engaged two mental health experts - Neuropsychologist Dr. Antolin Llorente and Psychiatrist Dr. Barry Morenz. Those experts evaluated petitioner for purposes of petitioner's state court petition to be declared incompetent to be executed. Briefly, Dr. Llorente's primary findings included very low IQ and "significant deficits in adaptive behavior." (ECF No. 280-6 at 3.) Dr. Morenz opined that petitioner's "condition is fixed and unchangeable such that he is permanently incapable of having a rational understanding of his crimes, conviction, sentence of death and the connections between his crimes, convictions and sentence of death." (ECF No. 280-6 at 71.)

At the hearing, petitioner's counsel confirmed that petitioner has not been evaluated by a mental health professional who is not employed by the prison system since 2017.

**III. Discussion**

Petitioner's counsel seeks to have the court declare petitioner incompetent based on the evidence provided: the Atkins proceedings in state court, petitioner's history of involuntary medication and medical care orders, and his medical record. As set out above, there is substantial

1    evidence that petitioner is incompetent.  However, the evidence from the Atkins proceedings and
2    the proceedings for involuntary medical care were submitted to address standards different than
3    the standard for determining competency under Rule 17 – whether petitioner lacks the capacity to
4    understand the nature or consequences of these legal proceedings.

5    With respect to the Atkins proceedings, the expert opinions and petitioner's medical
6    history were submitted to show that petitioner is incompetent within the meaning of Penal Code
7    §1376.  Section 1376 provides that a defendant who shows by a preponderance of the evidence
8    that they are "a person with an intellectual disability" is not eligible for the death penalty.
9    "Intellectual Disability" is defined as:  "the condition of significantly subaverage general
10   intellectual functioning existing concurrently with deficits in adaptive behavior and manifested
11   before the end of the developmental period, as defined by clinical standards."  Cal. Penal Code
12   §1376(a)(1).

13   It is important to note that the superior court did not find petitioner incompetent to be
14   executed.  Rather, the court accepted the parties' stipulation to vacate petitioner's death sentence.
15   In that stipulation, the government did not concede that petitioner met the Atkins standard.
16   Rather, the stipulation stated:  "the People believe there is some likelihood that Mr. Espinoza will
17   be found to have sustained his burden of proof by a preponderance of the evidence that he is
18   intellectually disabled within the meaning of Penal Code Section 1376, *Atkins v. Virginia, supra*,
19   and *Moore v. Texas, supra*."  (ECF No. 292-1 at 3.)

20   With respect to the state court orders requiring the involuntary medication of petitioner,
21   the state court is required by California law to rely on the opinions of a psychiatrist that the
22   prisoner has:  (1) a "serious mental disorder," as a result of which (2) "the inmate is gravely
23   disabled and does not have the capacity to refuse treatment with psychiatric medications or is a
24   danger to self or others," and (3) after being informed of the risks and benefits of the psychiatric
25   medication and any alternatives, the prisoner "refuses or is unable to consent to the administration
26   of the medication."  Cal. Penal Code §2602(c).  Under Penal Code §2604, an order for
27   involuntary medical treatment must be based on the similar opinion of a psychiatrist or
28   psychologist.

The standard for determining petitioner's competency under Rule 17 is not identical to the standards used in these state court proceedings regarding medical care. Under Rule 17, a party is incompetent "if he or she lacks the capacity to understand the nature or consequences of the proceeding, or is unable to assist counsel in the preparation of the case." Golden Gate Way, LLC, 2012 WL 4482053, at *2. While there is certainly a high degree of overlap between the Penal Code §§1376, 2602, and 2604 standards and the standards under Rule 17, the state court orders addressing those standards are not dispositive of the issue of competence under Rule 17. See Scannavino v. Fla. Dep't of Corr., 242 F.R.D. 662, 664 (M.D. Fla. 2007) (recognizing that "[b]ecause '[a] person may be competent to make some decisions but not others,' the test of a party's competency 'varies from one context to another'").

This court recognizes that Dr. Morenz rendered an opinion in 2017 that directly relates to the issue here. He found petitioner "permanently incapable of having a rational understanding of his crimes, conviction, sentence of death and the connections between his crimes, convictions and sentence of death." However, Dr. Morenz's opinion, and that of Dr. Llorente, were rendered six years ago. As Chief Judge Mueller has held, the court must look to current evidence to determine competency: "Neither a history of mental illness nor a previous determination of incompetency is sufficiently indicative of a plaintiff's current competency status." Jurgens v. Dubendorf, No. 2:14-cv-2780-KJM-DAD, 2015 WL 6163464, at *3 (E.D. Cal. Oct. 19, 2015); see also Hoang Minh Tran v. Gore, No. 10-cv-2682, 2013 WL 878771, at *5 (S.D. Cal. Mar. 8, 2013) (documents showing history of mental illness including depression, schizophrenia, post-traumatic stress disorder, anxiety, suicide attempt, and treatment with medications, failed to "show that Plaintiff, in his current state and with his current medications, is incompetent").

Petitioner's counsel points out that at least two courts have found a party incompetent under Rule 17, apparently based only on the written record. See Brock v. Cty of Fresno, No. 1:18-cv-01615-DAD-EPG, 2019 U.S. Dist. LEXIS 202540[2] (E. D. Cal. Nov. 19, 2019); Cortes v. Kern Cty Superintendent of Sch., No. 1:18-cv-0909-LJO- JLT, 2018 WL 3965372 (E.D. Cal.

---

[2] This court typically cites to Westlaw. However, petitioner's counsel cites to Lexis and Brock is not available on Westlaw.

6

Aug. 16, 2018). Neither judge discussed the procedures for finding incompetency in any detail. This court is not bound by the procedure used in those cases. At this juncture, this court finds it should give petitioner court-provided notice and an opportunity to be heard. Thomas, 916 F.2d at 1033-34; AT & T Mobility, 2015 WL 4751185, at *3.

Petitioner's counsel has presented more than sufficient evidence of petitioner's incompetency to trigger the application of Rule 17. Below, this court considers what notice and an opportunity to be heard should look like.

**A.  Notice**

This court questioned petitioner's counsel about how petitioner should be advised of these proceedings. Ms. Gardner stated that she had spoken to petitioner about the effect of a determination of incompetency and the appointment of a GAL. In her opinion, petitioner could not grasp the concepts and is not able to voice consent to these proceedings. However, petitioner understood that Ms. Gardner is his lawyer and is "fighting for him in the courts."

Because the determination of competency rests with the court, and in particular because this court has had no interactions with petitioner himself, this court finds it appropriate to question petitioner about his understanding of these proceedings. In AT & T Mobility, Chief Judge Mueller became concerned that a party, General Charles Yeager, was not competent to proceed without representation. Judge Mueller ordered the parties to brief the question and, upon receiving those briefs, determined that there was "substantial evidence to cast doubt on General Yeager's competence," triggering a determination of General Yeager's competence under Rule 17. Judge Mueller first held a hearing to determine whether General Yeager would consent to the appointment of a GAL. Judge Mueller questioned General Yeager about the role of a GAL and whether he would consent to the appointment of one. His answers were "confused." Judge Mueller took into evidence a declaration from General Yeager that he would agree to certain people being appointed as his GAL. 2015 WL 4751185, at *1-2.

Judge Mueller then made the following findings:

> The court's previous orders have informed General Yeager of the court's concern that he is not competent to continue without representation. *See* ECF Nos. 169, 185. His behavior, demeanor, and

> answers to questions at the hearings on March 24, 2015 and June 2, 2015 reaffirmed the court's concerns. He was given notice and an opportunity to advise the court whether he would consent to the appointment of a guardian, but he could not answer the court's questions, did not understand the purpose of the June 2 hearing, and did not consent to the appointment of a guardian. Although General Yeager's written declaration describes his purported consent to the appointment of certain persons as guardians, he seemed unfamiliar with that document at the hearing, chose not to read the second page, and he appears not to have known the critical second page existed. The court cannot rely on the declaration as reflecting his personal knowledge or accurately describing his consent.

2015 WL 4751185, at *3. Judge Mueller concluded that a hearing was necessary to receive evidence of General Yeager's competence. Id. at *4; cf. Neilson v. Colgate-Palmolive Co., 199 F.3d 642, 658 (2d Cir. 1999) (Sotomayor, J., dissenting) ("[T]he majority adopts the astonishing position that a mentally ill individual is entitled to less, rather than more, notice based on her illness. In my opinion, this conclusion turns the due process principle of "notice and opportunity to be heard" on its head.")

This court intends to hold an in-person hearing to question petitioner about his understanding of these proceedings and whether he consents to the appointment of a GAL. To avoid disruption to petitioner, this court intends to hold the hearing at the prison where petitioner is incarcerated. Counsel for both parties may propose questions for the undersigned to ask and counsel will be expected to attend the hearing. Petitioner's counsel has informed the court that respondent does not take a position on the motion to declare petitioner incompetent. If respondent feels that the attendance of their counsel at the hearing is not necessary, respondent shall file a notice of nonappearance which includes a statement that respondent takes no position on petitioner's counsel's motion.

**B.  Opportunity to be Heard**

At this juncture, the court need not determine what sort of hearing should take place. If petitioner consents to appointment of a GAL, the court may not need to conduct a thorough

////

////

////

8

hearing.³ However, if petitioner objects to the appointment of a GAL and contends he is competent, then at least "some hearing" is required. Thomas, 916 F.2d at 1033.

### C. Appointment of Counsel

If petitioner objects to appointment of a GAL, or this court finds petitioner appears unable to consent to appointment of a GAL, and some sort of fact-finding proceeding is necessary, then this court will consider whether petitioner should be appointed counsel for purposes of the competency proceedings. When asked at the hearing about the appropriateness of appointing counsel in these circumstances, Ms. Gardner expressed concern that appointment of another attorney would confuse petitioner but deferred that the question should be left to the court's discretion. At this point, this court is inclined to find appointment of counsel for petitioner would be appropriate to give petitioner a full opportunity to be heard.

### D. Appointment of Independent Expert

Because the experts hired by petitioner in 2017 relied on information that is not current and more recent evaluations by prison mental health professionals were done for other purposes, this court finds it likely an independent expert will be necessary to render an opinion for the Rule 17 determination. However, again, that is not a decision that this court need make at this time.

For the foregoing reasons, IT IS HEREBY ORDERED as follows:

1. This court intends to hold an in-person hearing at petitioner's place of incarceration to provide petitioner with notice of his counsel's Petition to Determine Incompetency and for Appointment of Guardian Ad Litem. This court anticipates that the following people will attend the hearing: the undersigned magistrate judge, a court reporter, a court staff attorney, petitioner, his counsel, and respondent's counsel. If respondent feels that the attendance of their counsel is not necessary, respondent shall file a notice of nonappearance which includes a statement that respondent takes no position on petitioner's counsel's motion to declare petitioner incompetent.

////

---

³ This court recognizes that asking a possibly incompetent person whether they consent to appointment of a GAL is somewhat contradictory. If a party tells the court that they consent to a GAL, but there are serious questions about their competency, then the court may need to conduct more thorough fact-finding on the competency question.

9

2. At the notice hearing, this court intends to question petitioner directly about his understanding of counsel's motion.  Within thirty days of the date of this order, petitioner's counsel may file a list of any questions they feel the court should ask.  If respondent wishes to opine on the questions or suggest others, they may file a response to petitioner's counsel's filing within ten days thereafter.

3. Court staff will contact petitioner's counsel, respondent's counsel, and the prison to schedule the hearing.

DATED:  September 20, 2023

/s/  DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DB:9
DB prisoner inbox/capital/Espinoza.comp notice hrg(1)